**JO-ANN'S LAUNDER CENTER, INC. et al., Plaintiffs**

**v.**

**THE CHASE MANHATTAN BANK, N.A., Defendant**

Civil No. 1989-106

District Court of the Virgin Islands

Div. of St. Croix

February 9, 1995

Alkon, Rhea & Hart, and Gerald T. Groner, Esq., St. Croix, V.I., *for the Plaintiffs*

Richard P. Farrelly, Esq., St. Thomas, V.I., Andrew Kosloff, Esq., *of Counsel, for the Defendant*

MOORE, *Chief Judge*

## MEMORANDUM

THIS MATTER is before the Court on the following motions: (1) defendant's motion for judgment notwithstanding the verdict, or alternatively, for a new trial; and (2) plaintiff's motion for fees and costs.

Following a four-day jury trial, plaintiff Jo-Ann's Launder Center, Inc. ("Jo-Ann's" or "plaintiff") was awarded a $500,000 verdict against defendant Chase Manhattan Bank, N.A. ("Chase" or "defendant"). The case was tried to the jury on the following theories (1) that Chase had breached its loan agreement with Jo-Ann's by unjustifiably declaring that the loan was in default and calling the guaranty by the Small Business Administration ("SBA"); (2) that it had breached an agreement to permit a moratorium on principal payments for the six months between

June and November, 1986, and (3 the defendant had breached its duty of good faith and fair dealing to plaintiff by calling the SBA guaranty without any notice to Jo-Ann's that it was about to do so or that it had done so.

## I. DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE FOR A NEW TRIAL

Chase now argues that the verdict must be set aside because (1) there was no principal moratorium agreement, (2) Jo-Ann's missed the November 1985 payment and breached the loan agreement, (3) the jury improperly awarded Jo-Ann's gross and future profits, and (4) Chase's conduct did not proximately cause the harm sustained by Jo-Ann's.

Under Federal Rule of Civil Procedure 50(b), the court may set aside a verdict if no reasonable jury could have reached the challenged verdict. See Motter v. Everest & Jennings, Inc., 883 F.2d 1223, 1228 (3d Cir. 1989). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Warner v. Lawrence, 754 F. Supp. 449, 451 (D.V.I. 1991). The court has discretion to order a new trial in accordance with Federal Rule of Civil Procedure 59, rather than grant judgment, if it believes a second trial is warranted. Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36, 66 L. Ed. 2d 193, 101 S. Ct. 188 (1980); see also American Bearing Co. v. Litton Indus., Inc., 729 F.2d 943, 948 (3d Cir.) (referring to trial court's discretionary power to grant new trial), cert. denied, 469 U.S. 854, 83 L. Ed. 2d 112, 105 S. Ct. 178 (1984).

In some instances, a new trial may be granted where a judgment n.o.v. would not be justified, see Roebuck v. Drexel Univ., 852 F.2d 715, 735 (3d Cir. 1988), or even where there is legally sufficient evidence supporting the verdict. See Leichihman v. Pickwick Int'l, 814 F.2d 1263, 1267 (8th Cir. 1987), cert. denied, 484 U.S. 855, 98 L. Ed. 2d 116, 108 S. Ct. 161 (1987); Taylor v. Home Ins. Co., 777 F.2d 849, 855 (4th Cir. 1985). Under these circumstances, a new trial is granted on the ground that the verdict is against the weight of the evidence. See 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2531 (2d ed. 1995). However, a new trial cannot be granted because of mere harmless error; "no error or

defect in any ruling or order . . . is ground for granting a new trial . . . unless refusal to take such action appears to the court inconsistent with substantial justice." Fed. R. Civ. P. 61.

## A. *Sufficiency of Evidence Regarding Chase's Alleged Breach of Moratorium Agreement*

Chase argues that the jury erred in concluding that Chase breached a moratorium agreement with Jo-Ann's. Chase asserts that there was unrebutted evidence that the SBA had to approve any such agreement between the parties, and that approval was never given. Thus, according to defendant, the jury verdict was erroneous as a matter of law.

■ Jo-Ann's presented evidence that it requested a six-month principal moratorium from Chase's loan officer, that the loan officer approved a moratorium, and that the bank accepted interest-only payments between June and December 1986. (Vol. I, Tr. at 38-49.) Notwithstanding Chase's evidence that no such moratorium agreement arose and that SBA approval was required, the jury's verdict was reasonable and not contrary to law. There was sufficient evidence that an oral agreement for a six-month principal moratorium was made between Jo-Ann's and Wingrove Lynton, Chase's loan officer, in June 1986, to which the defendant acquiesced by accepting the checks and not notifying the plaintiff that its request for a moratorium had been denied.

## B. *Sufficiency of Evidence Regarding Chase's Alleged Breach*

Chase further contends that the judgment must be reversed because there was evidence at trial that Jo-Ann's failed to make any payment on its loan in November 1985 and failed to make up this missed payment in subsequent months. As a result, and according to Chase, Jo-Ann's defaulted on its loan before any breach of contract by Chase.

■ It is well-settled that a material breach of contract relieves the non-breaching party of her duties. In this case, the evidence at trial revealed that Jo-Ann's missed a payment in November 1985. Chase contends that Jo-Ann's defaulted on its loan because the December 1985 payment of $5,400 was allocated as $4,567.43 in interest for

229

November and December, leaving only $832.57 applied against Jo-Ann's November principal payment.

It is clear, however, that the jury was presented with ample evidence that the missed payment was not a material breach. The proofs established that Jo-Ann's resumed making payments in December 1985 and each month thereafter. Jo-Ann's presented testimony that the December payment cured any breach, and that there was never a sixty-day uncured default, which was necessary before the defendant could accelerate the loan and call the guaranty. David Munoz, a Chase official, testified that each month's payment cured the prior month's non-payment. (Vol II, Tr. at 204-05.) And, at a minimum, there was undisputed testimony that Chase did not take any action on the November 1985 missed payment before calling the SBA guaranty.[1]

Based on the evidence before it, the jury found that Chase's call of the guaranty was a material breach of the loan agreement between the parties. It apparently rejected Chase's argument that Jo-Ann's had breached the agreement. This Court finds that there was no error and that the evidence sufficiently supported both conclusions by the jury.

## C. *Sufficiency of Evidence on Damages*

Secondly, Chase argues that the jury incorrectly awarded Jo-Ann's gross damages. The bank contends that the jury did not take into account the loan obligation in fixing damages, and that the damage award is excessive by $270,000. Chase also argues that the evidence regarding Jo-Ann's lost profits and the value of the business was too speculative and uncertain.

 This Court has the power to order Jo-Ann's to file a remittitur or submit to a new trial if the size of the verdict is "so grossly excessive that it is not rationally related to any evidence adduced at trial." Brown v. McBro Planning & Dev. Co., 660 F.

---

[1] See Island Block Corp. v. Jefferson Constr. Overseas, Inc., 349 F.2d 322, 326 (3d Cir. 1965) (a non-breaching party is not relieved of his contractual obligations if he continues to accept performance by the other party after the breach has occurred).

Supp. 1333, 1337 (D.V.I. 1987).[2] In the Virgin Islands, lost profits are recoverable up to an amount which can be established with reasonable certainty. Caribe Contracting Co., Inc. v. Edwards, 18 V.I. 194, 200-01 (Terr. Ct. 1982) (following Restatement (Second) of Contracts § 352).[3]

█ In its charge, the Court instructed the jury on the proper measure of compensatory damages, that, in determining an award for damages, it

> should include any damages suffered by the plaintiff which represent a loss in value due to the defendant's breach. This loss in value . . . includes lost profits; that is to say, profits which the plaintiff would have made but for the unlawful conduct of defendant. In calculating loss, you may also consider any other incidental or consequential losses which the plaintiff has actually suffered due to the defendant's action.

(Vol. V, Tr. at 29-30.) There was no objection to this instruction on damages. (*Id.* at 42-45.)

The evidence on damages was presented mainly through the testimony of Jo-Ann's expert, Leonard Chasen. The jury heard evidence regarding Jo-Ann's losses and profits during its years in operation, as well as projections for expected revenues, expenses, and profits through 1997 in the event that Jo-Ann's had not gone out of business. According to Mr. Chasen, if Jo-Ann's had received additional financing promised by Chase in 1987, plaintiff would have been able to realize $263,200 in profits between 1988-1997. (Vol. III, Tr. at 68-69.) In addition, Chasen testified that Jo-Ann's would have had a resale value of $150,000 in 1997. (Id. at 72.) The jury further had the evidence before it that the $270,000 still due on

---

[2] Chase relies on Tunis Bros. Co. v. Ford Motor Co., 952 F.2d 715 (3d Cir. 1991), in support of its argument that the proper measure of damages is net profits not gross profits. As plaintiff points out, however, this case was decided under Pennsylvania law.

[3] Jo-Ann's cites Vitex Mfg. Corp. v. Caribtex Corp., 377 F.2d 795 (3d Cir. 1967), for the proposition that Virgin Islands law provides for the recovery of lost gross profits. Actually, the rule set out in Vitex states that overhead expenses are to be treated as part of gross profits and not deducted as a cost. It seems clear from Vitex that net profits, rather than gross profits, are recoverable. As explained herein, it can reasonably be inferred that the jury awarded Jo-Ann's a net figure when it calculated damages at $500,000.

the loan would have to be paid to the SBA. (Id. at 75.) Based on Mr. Chasen's calculations, the jury thus had evidence that Jo-Ann's had suffered $683,000 in damages as a result of defendant's breach (the sum of these three figures). (*Id.*) This figure increased to $865,000 using figures from projections earlier made by the bank. (*Id.* at 79.)[4]

In reaching its verdict of $500,000 damages, the jury clearly did not award Jo-Ann's the full measure of damages supported by the evidence, which ranged from $683,200 to $865,000. The fact that it awarded less than projected by plaintiff's expert witness indicates that the jury reached its own independent conclusion. This award was reasonably based on the evidence presented. The Court finds no merit in Chase's argument that the jury erroneously awarded gross profits or that the evidence was speculative or uncertain.

## D. *Sufficiency of Evidence on Causation*

■ Lastly, defendant contends that there was insufficient evidence that Jo-Ann's damages were proximately caused by any breach of the loan agreement by Chase. The issue of causation was previously raised by Chase in its summary judgment motion. This Court denied Chase's motion because there was a genuine issue of fact whether the call of the guaranty was a proximate cause of Jo-Ann's damages. Thus, the issue was left for jury determination. At trial, plaintiff presented ample evidence to establish causation. The jury heard testimony from Jo-Ann's expert on the business' profitability but for the defendant's conduct. There was also evidence that Chase's call of the guaranty rendered Jo-Ann's "unbankable." Chase presented its own evidence to refute plaintiff's experts. Again, the jury reached its own independent conclusion, and Chase's argument that causation is not supported by the evidence is unavailing.

---

[4]On cross-examination, Chasen acknowledged that his future profits projection did not include repayment of Jo-Ann's loan during this period. This is apparently the basis for the defendant's contention that the award is excessive by the amount of $270,000. However, even if the higher number of $865,000 is reduced by $270,000, the amount of the loan, the result is still higher than the amount awarded by the jury.

232

## II. PLAINTIFF'S MOTION FOR FEES AND COSTS

◼ In this jurisdiction, a court may award costs and fees to a prevailing party. See V.I. CODE ANN. tit. 5, § 541(b) (1967 & 1993 Supp.); Melendez v. Rivera, 24 V.I. 63, 64 (Terr. Ct. 1988). The decision whether to award fees to a prevailing party is within the court's discretion. Bedford v. Pueblo Supermarkets of St. Thomas, Inc., 18 V.I. 275, 278 (D.V.I. 1981). A prevailing party is one who has received "at least some of the benefits which were sought in the litigation, even if a judgment is not finally obtained." Melendez, 24 V.I. at 65 (citing Ingvoldstad v. Kings Wharf Enterprises, Inc., 20 V.I. 314 (D.V.I.), aff'd, 734 F.2d 5 (3d Cir. 1983)).

Jo-Ann's seeks to recover fees and costs as a prevailing party. In all, plaintiff seeks to recover $110,765 in attorney's fees and $17,213.73 in costs. There can be no question that Jo-Ann's was the prevailing party here. However, Chase argues that plaintiff is not entitled to indemnification for its fees and costs because there is a contingency fee arrangement between Jo-Ann's and its counsel. It analogizes this case to a personal injury action, for which, according to section 541(b), as amended in 1986, attorney's fees are not recoverable. Perez v. Weigers, 25 V.I. 379, 384 (D.V.I. 1990).[5]

◼ Chase's argument that section 541(b) precludes a fee award is incorrect. As Jo-Ann's points out, the 1986 amendment to section 541(b) was intended to prohibit fee awards to plaintiffs and defendants alike in personal injury cases. There is no suggestion that the Legislature, by its amendment, intended to limit fee awards in all cases which may typically involve contingent fee arrangements. On the contrary, contingency fees have long been viewed as merely one factor to be applied when considering whether to award fees or what amount is appropriate. Likewise,

---

[5] V.I. Code Ann. tit. 5, § 541(b) states as follows:

(b) The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties; but there shall be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorney's fees in maintaining the action or defenses thereto; *provided, however, the award of attorney's fees in personal injury cases is prohibited unless the court finds that the complaint filed or the defense is frivolous.*

(emphasis added). The portion in bold was added by the 1986 amendment. See 1986 V.I. Sess. Laws 5176 § 1(c) (1986).

fee awards in contingent fee cases do not provide a windfall to the prevailing party's counsel; rather, they indemnify the prevailing party for a reasonable portion of his costs incurred in prosecuting or defending an action. Thus, it is squarely within this Court's discretion to award fees and costs in this case.

■ In determining the "lodestar," or initial valuation of an attorney's services, we are instructed to consider the number of hours spent on the case and the reasonable hourly rate.[6] Jo-Ann's seeks reimbursement for 552.90 hours of time expended by three attorneys: Thomas Alkon, Esq. ($225/hr.), Thomas H. Hart, Esq. ($225/hr.), and Gerald T. Groner, Esq. ($175/hr.). Chase does not dispute these hourly rates. However, the bank contends that Jo-Ann's reimbursement should be limited only to the hours involved in prosecuting its contract claims. Seven of ten causes of action in plaintiff's complaint raised tort theories of recovery. This Court dismissed plaintiff's tort claims, and thus, the jury's verdict was limited to consideration of three contract claims.

Our assessment of the reasonable number of hours expended must focus on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 1940, 76 L. Ed. 2d 40 (1983). In that regard, plaintiff's "affidavit of counsel" includes time charged for hours which did not substantially contribute to the eventual outcome; for example, time is charged for defending tort claims which were ultimately dismissed and for defending Chase's motion to redact which was granted. Moreover, plaintiff is seeking to recover for the time of two lawyers interviewing and deposing the same witnesses and for all three

---

[6]The approach to determining fees in this jurisdiction has long been based on several Third Circuit opinions, e.g., Acosta v. Honda Motor Co., 717 F.2d 828, 843-44 (3d Cir. 1983); Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 (3d Cir. 1973) ("Lindy I"); Lucerne Investment Co. v. Estate Belvedere, Inc., 411 F.2d 1205, 1207 (3d Cir. 1969). Until the Appellate Division of this Court determines to the contrary, we, as the federal, Trial Division, will continue to follow these cases in determining the award of attorneys fees and costs, including the "lodestar" initial valuation, see Lindy I at 167. Accord United States and Government of the Virgin Islands v. Bruney, V.I. BBS 93CR035.DT1, n.20 (D.V.I. Oct. 12, 1994) (the federal, Trial Division, of this Court is bound by the statutory construction and interpretation of the Appellate Division); In the Matter of Barrett, 91CI159A.DT2 (D.V.I. App. Jan. 31, 1995) (articulating the function of the Appellate Division within our separate, insular judicial system as the highest arbiter of our local, Territorial law).

counsel attending trial (approximately seventy-five hours claimed for about twenty-five hours of trial). We recognize that plaintiff was not required to submit an affidavit dividing the hours expended on a claim-by-claim basis. *Id.* However, this Court will apply its discretion to reduce plaintiff's award as follows: (1) the claim for time spent outside of trial will by discounted by one-half to $45,000, to account for the duplication of effort among the three attorneys ($110,000 total fee less $20,000 "in-trial" fee is $90,000/2 or $45,000);[7] (2) this amount will be reduced further by 20%, to $36,000, to account for time spent on efforts which did not contribute to the outcome (80% of $45,000); added to the $36,000 is the fee allowed for twenty-five hours of trial time for one attorney at the highest hourly rate, namely, $5,625 (25 times $225 is $5,625). The total fee award is thus $42,000 ($36,000 plus $5,625 rounded to the nearest $1,000).

 Chase also argues that Jo-Ann's counsel is not entitled to recover fees for client meetings and conferences with co-counsel or for time involved in taking depositions. Section 541(a)(2) allows as costs "necessary expenses of taking depositions which were reasonably necessary in the action." Time expended conferring with co-counsel or the client is recoverable as long as reasonably expended. The Court finds that the hours charged by plaintiff's counsel for meetings and depositions are not unreasonable.[8]

The Court next considers whether any increase or decrease in the "lodestar" amount is appropriate here. We look to the contingent nature of plaintiff's success and the quality of counsel's work to arrive at a reasonable fee award. We do not agree with plaintiff's characterization of this case as complex and novel. As for the quality of counsel's work, we find that the lodestar amount of $42,000 adequately compensates Jo-Ann's attorneys for their services, and it will not be adjusted upward as plaintiff requests.

As for costs, plaintiff seeks to recover expert witness fees, Westlaw research costs, certain travel expenses, and transcript fees.

---

[7] We note that the "affidavit of counsel" is a joint petition which encompasses two different hourly rates; for the sake of simplicity, and to account for the differing roles counsel played, we reduce plaintiff's "pre-trial" fee request by a factor of 50%.

[8] Any duplication of effort in the hours charged by plaintiff's counsel for meetings and depositions has been taken into consideration by the Court's discounting of non-trial fees.

Chase contends that expert fees are limited by statute and that Jo-Ann's is not entitled to recover its legal research or travel costs. Jo-Ann's concedes that expert fees are limited to $40 per day as governed by 28 U.S.C. § 1821. The Court will deny any recovery for travel costs; travel costs for taking depositions are not recoverable absent special circumstances.[9] The Court finds no special circumstances existed here even though the Lynton deposition was conducted in Baltimore, Maryland. Similarly, we find that costs for Lexis or Westlaw research are amply accounted for in the "lodestar" amount. Jo-Ann's has twenty (20) days within which to submit an appropriate itemization of the costs the Court will allow.

## III. CONCLUSION

As explained herein, Chase's motion for judgment as a matter of law or a new trial is denied. Jo-Ann's motion for fees and costs is granted; and plaintiff is awarded the sum of $42,000 in attorney's fees as indemnification to the prevailing party for a reasonable portion of its costs incurred in prosecuting this action, with costs to be determined after plaintiff submits further documentation. An appropriate order follows.

## ORDER

THIS MATTER came before the Court on the following motions: (1) defendant's motion for judgment notwithstanding the verdict, or alternatively, for a new trial; and (2) plaintiff's motion for fees and costs.

·Upon consideration of the written and oral submissions of counsel and for the reasons disclosed in the Memorandum Opinion of even date, it is hereby

ORDERED that defendant's motion for judgment notwithstanding the verdict or for a new trial is DENIED. Plaintiff's motion for fees and costs is GRANTED in the amount of $42,000, with costs to be determined after plaintiff submits further documentation.

---

[9]See Heller Found. v. Lee, 847 F.2d 83, 89 (3d Cir. 1988) (disallowing recovery of costs, i.e. travel expenses, associated with such time).