**EQUIVEST ST. THOMAS, INC., Plaintiff**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, and ROY MARTIN,**
**in his official capacity as Tax Assessor, Defendants**
**EQUIVEST ST. THOMAS, INC. v. GOVERNMENT OF V.I.**

Civ. No. 2001-155

District Court of the Virgin Islands

Division of St. Thomas and St. John

December 31, 2004

CHAD C. MESSIER, ESQ., WILLIAM S. MCCONNELL, ESQ., St. Thomas, U.S.V.I., *for the plaintiff.*

WAYNE G. ANDERSON, ESQ., KERRY E. DRUE, ESQ., CAROL THOMAS-JACOBS, ESQ., MICHAEL S. MCLAURIN, ESQ., St. Thomas, U.S.V.I., *for the defendants*.

MOORE, *District Judge*

## MEMORANDUM

(December 31, 2004)

On May 12, 2003, I found the Territory's property tax system unlawful because it "systemically employ[ed] a method of assessment not calculated to determine the actual value of properties as required by 48 U.S.C. § 1401a." *Berne Corp. v. Virgin Islands*, 262 F. Supp. 2d 540, 561 (D.V.I. 2003), *aff'd*, 105 Fed. Appx. 324 (3d Cir. 2004). Accordingly, I entered a decree in the consolidated portion of this litigation awarding injunctive and other such relief common to all parties. That relief included an award of reasonable attorneys' fees and costs for each plaintiff as determined upon due application to this Court after the completion of the individual portion of each case. The plaintiff's individual case is now complete, and all appeals by the government have been resolved in the plaintiff's favor. Thus, all that is left to be determined in this case is the plaintiff's request for attorneys fees and costs. For the reasons set forth below, I rule that the plaintiff is entitled to $354,666.45 in attorneys' fees, $11,336.35 in costs and $120.00 in expert witness costs it incurred in successfully litigating this matter. Accordingly, I will order the government to pay the plaintiff $366,122.80.

## I. LEGAL BASIS FOR AWARDING ATTORNEYS FEES AND COSTS

On May 23, 2003, plaintiff Equivest St. Thomas, Inc. ["Equivest"] filed a notice of filing of attorneys fees and costs. Equivest supplemented this filing on August 21, 2003, and July 7, 2004.[1] The government has opposed Equivest's requests for fees and costs. To the extent each of the

---

[1] Equivest's May 23, 2003, filing for attorneys' fees and costs was premature because my May 12, 2003, decree did not did not permit award of attorneys' fees until the individual portion of Equivest's case had been determined. After its individual case was decided on August 13, 2003, Equivest appropriately supplemented its request on August 21, 2003. Following resolution of appeals and other outstanding issues, Equivest supplemented its request for attorneys' fees for a second and final time on July 7, 2004. The government filed oppositions to Equivest's requests on September 8, 2003, and July 26, 2004.

government's many objections to Equivest's requested fees and costs are comprehensible, I will address them individually in Part II below. Before addressing these objections, however, I first review the legal basis for awarding Equivest's fees and costs and reject the government's initial argument that I should refrain from providing Equivest any such award.

The plaintiff's complaint, as amended, sought to enjoin the defendants from assessing real property taxes for commercial property in the Virgin Islands other than in strict accordance with 48 U.S.C. § 1401(a) and 33 V.I.C. § 2404. The plaintiff alleged that, because the defendants utilized outdated evaluating methods that unequally valued property among similarly situated taxpayers, the defendants were violating their civil rights under 42 U.S.C. § 1983. The plaintiff's suit was consolidated with other similar cases brought by other plaintiffs and a bench trial was held on the issues common to all plaintiffs. Following the bench trial, I found that the

> plaintiffs have proved their federal claim that Roy Martin, acting in his official capacity as the Tax Assessor for the Government of the Virgin Islands, violated plaintiffs' civil rights under 42 U.S.C. § 1983 by systematically employing a method of assessment not calculated to determine the actual value of properties, as required by 48 U.S.C. § 1401a, namely, he did not use the income capitalization approach in appraising and assessing plaintiffs' commercial properties and abided by the limitation on the assessment of residential property imposed by 33 V.I.C. § 2402(a).

*Berne Corp.*, 262 F. Supp. 2d at 561. To remedy the government's unlawful behavior, I determined that Equivest and the other plaintiffs were entitled to equitable relief under federal and Virgins Islands law, namely 42 U.S.C. § 1983 and 5 V.I.C. § 80. *Id.* at 565-72. Included in my decree enjoining the government from illegally assessing the plaintiffs properties was an order awarding each plaintiff "costs of suit incurred thus far, including reasonable attorneys fees and costs, as shall be determined upon due application to this Court as each individual case is completed." *Id.* at 577.

■ This award of attorneys' fees and costs was permitted under federal and local law. Congress has provided courts with discretion to award attorneys' fees and costs to parties who successfully litigate civil rights claims under section 1983. *See* 42 U.S.C. § 1988 ("the court, in its

discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs ... ."). The Virgin Islands Legislature more broadly allows a court to award to any prevailing party in a civil action costs and fees it incurred in prosecuting or defending the action. *See* 5 V.I.C. § 541. Under both statutes, a party need not prevail on every claim to be considered a prevailing party for purposes of qualifying for an award of attorneys' fees. *See Truesdell v. Philadelphia Housing Auth.*, 290 F.3d 159, 163 (3d Cir. 2002) ("plaintiffs may be considered 'prevailing parties' for attorney's fees purposes [under § 1988] if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983)); *Jo-Ann's Launder Ctr., Inc. v. Chase Manhattan Bank, N.A.*, 31 V.I. 226 (1995) ("A prevailing party [under 5 V.I.C. § 541] is one who has received at least some of the benefits which were sought in the litigation ... .").

In their opposition filing, the government requests that I entirely refrain from awarding Equivest fees and costs. Given that on May 12, 2003 I awarded Equivest "costs of suit incurred thus far, including reasonable attorneys fees and costs," I will treat the government's request as a motion to reconsider my award. In addressing this motion, I note that the government has offered nothing new that would compel me to reverse my earlier decision.[2] That decision explained the long and tortured history of this litigation, which the government made unnecessarily burdensome by defending the indefensible at trial. *See Berne Corp.*, 262 F. Supp. 2d 540. I will incorporate this history by reference here, as it provides evidence of the substantial litigation costs the plaintiff incurred in protecting its civil rights. The plaintiff having achieved total success, it is entitled to just compensation for these litigation costs.[3] Significantly, I also recognize that "although [section 1988] expressly refers to a district court's discretion, it is well settled that

---

[2] The government argues I should reverse my earlier decision and deny Equivest all attorneys' fees and costs because this litigation was "largely a routine real property tax assessment challenge." (Defs.' Opp'n. at 4.) Quite the contrary, this litigation was enormous in scope, as it involved a challenge to the entire system of property taxation in the Virgin Islands.

[3] This award is merely compensatory and not punitive in nature. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285-87, 105 L. Ed. 2d 229, 109 S. Ct. 2463 (1989) (discussing compensatory nature of § 1988 fee award).

a prevailing plaintiff should recover an award of attorney's fees absent special circumstances." *See County of Morris v. Nationalist Movement*, 273 F.3d 527, 535 (3d. Cir 2001) (citing *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402, 19 L. Ed. 2d 1263, 88 S. Ct. 964 (1968)). As no special circumstances are present here that would warrant denying Equivest attorneys' fees and costs, I will reject the government's motion to reconsider, and will expand my award to include costs and fees Equivest incurred after May 12, 2003.

In analyzing the grounds of the government's opposition, I will focus on the necessity of the fees and costs incurred by Equivest and whether it was reasonable for Equivest's attorneys to bill these fees and pass on their costs. As the United States Supreme Court has instructed, "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation ... multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 432, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983). Thus, after determining the appropriateness of the time Equivest spent litigating this matter, I will calculate a "lodestar" amount relative to reasonable hourly rates in this jurisdiction. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 562-66, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (1986) (discussing calculation of the lodestar). If necessary, this amount will then be adjusted to take into account any other relevant factors that are not already adequately represented in the lodestar calculation. *Id.* at 564-66; *see also Blum v. Stenson*, 465 U.S. 886, 897-901, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984).

## II. THE GOVERNMENT'S OPPOSITION TO EQUIVEST'S REQUEST FOR ATTORNEYS' FEES AND COSTS

### A. There Is No Evidence Of Overstaffing Or Excessive Staff Conferences

█ The government argues that Equivest's fees and costs should be substantially reduced because Equivest's attorneys overstaffed this litigation with nine attorneys and five paralegals. The government also complains that this alleged overstaffing resulted in an excessive number of staff conferences. A closer review of plaintiff counsels' billing records shows that, although fourteen individuals billed time on this matter, 88% of the attorneys' fees requested represent the work of one partner and one

associate.[4] Assigning two individuals to handle the vast majority of this matter hardly amounts to overstaffing, especially considering the great extent to which the government's obstruction added to the complexity of this litigation, thereby increasing the plaintiff's need to staff this matter with additional attorneys. None of the billing records indicate the individuals contributing to this matter were performing duplicative work or that their work was unnecessary. Moreover, it is entirely reasonable that the two attorneys primarily handling this matter would occasionally rely on the contribution of other attorneys and paralegals. Thus, I reject the government's claim that the plaintiff's attorneys overstaffed this litigation.

The government argues next that Equivest's award of fees and costs should be reduced due to its attorneys engaging in unnecessary staff conferences. The government stresses that Attorney Messier's participation in 120 staff conferences related to this complex litigation over the course of nearly two years is, "[b]y any standard, ... extremely excessive and unnecessary." (Opp'n. Mot. at 10.) I disagree that such a number of conferences is *per se* unreasonable, as "'[c]areful preparation often requires collaboration and rehearsal.'" *Planned Parenthood v. AG*, 297 F.3d 253, 272 (3d Cir. 2002) (quoting *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1988)). Although the government has not itemized the specific conferences it finds objectionable,[5] I have reviewed the records of all staff conferences, including those involving Attorney Messier, and have found no obvious examples of unnecessary communication between the plaintiff's attorneys and paralegals. Viewing the billing records as a whole,

---

[4] I note that, despite the government's complaints to the contrary, the billing records of the plaintiff's attorneys are adequate. The government complains that, "due their lumping of billing entries," it is "sometimes unclear" how much time the plaintiffs' attorneys devoted to certain tasks. (Opp'n at 11.) As the Third Circuit Court of Appeals has instructed, "it is not necessary to know the exact number or minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973).

[5] Instead of identifying specific staff conferences that it claims were unnecessary, the government argues generally that an award of fees for such conferences are not compensable under 5 V.I.C. § 541 and that I should deny the award because the plaintiff has not satisfied its duty to minimize expenses under 42 U.S.C. § 1988. Not only are these generalized arguments without merit, they provide no assistance in identifying particular instances of excessive staff conferences.

however, I do not doubt that there was occasionally some duplication of effort and instances of unnecessary communication. Thus, while I do not fully accept the government's argument, I will give the government the benefit of the doubt and accept the plaintiff's offer to reduce the overall amount of fees requested by five percent.[6]

## B. There is No Evidence of Excessive Communication With Client And Experts

The government also complains that the plaintiff's attorneys "spent an inordinate and unnecessary amount of time communicating with [Equivest representatives] Gwen Parrish, J. Cohen, and the experts via e-mail and telephone." (Opp'n Br. at 10.) The government then vaguely suggests that "the amount of time spent in this case is unreasonable and excessive and therefore, not compensable." (*Id.* at 10-11.) Again, the government fails to identify any specific instances of unnecessary communication. Even worse, the government does not reference any legal authority, relevant or otherwise, in support of its argument.

Rule 1.4 of the American Bar Association Rules of Professional Conduct provides, in relevant part, that "a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Additionally, subpart (a)(2) of that rule demands that a lawyer "reasonably consult with the client about the means by which the client's objectives are to be accomplished." These ethical duties required that Equivest's attorneys engage in significant communication with Equivest representatives Gwen Parrish and J. Cohen. Having reviewed plaintiff counsels' billing records, I have found no instances of communication between Equivest's attorneys and its representatives that were not reasonably necessary to prepare for trial or to keep Equivest informed of the latest developments in the case. Similarly, I find no evidence of unnecessary communication between the plaintiff's attorneys and expert witnesses. Thus, I will not reduce

---

[6] In its September 22, 2003 reply brief, the plaintiff provided the following offer to reduce its overall fees by five percent:

> To the extent, however, that the Court concludes that these conferences did result in some duplication of effort, Equivest submits that a five percent (5%) reduction in the overall amount of fees requested would be sufficient to address this concern.

(Reply Br. at 7.)

Equivest's attorneys' fee award based on the government's alleged claims of excessive client and expert communication.

## C. The Time Devoted to Preparation of Pleadings and Other Papers Filed With the Court Was Reasonable

The government next challenges the time Equivest's attorneys billed for preparation of pleadings and other papers filed with the Court. Unlike its previous arguments, the government has identified specific examples within this category of excessive billing. For example, the government complains that the plaintiff's attorneys spent approximately thirty-five hours in the initial phase of this case. Specifically, the government argues that the initial filings in this matter were similar to the ones filed in the *Berne* litigation, and therefore it was unnecessary for the plaintiff's attorneys to spend approximately thirty-five hours to review those earlier filings and draft a complaint, motion for injunctive relief, an accompanying memorandum of law, and an affidavit. The government also complains that Equivest's attorneys spent an excessive amount of time preparing proposed findings of fact and conclusions of law.

██ I disagree with the government's general challenge to the fruitful time and effort plaintiff's counsel put into its filings with this Court, and with the specific complaints levied against the time billed for Equivest's initial filings and findings of facts and conclusions of law. Having reviewed the billing records associated with plaintiff counsel's preparation of court filings, I find that the time devoted to these filings was not "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983). Regarding the initial filings, it would be unprofessional for the plaintiff's attorneys to blindly copy the complaint and other early documents from the *Berne* litigation, as the government's argument suggests. Moreover, spending some thirty hours researching, editing, and revising such critical documents as a complaint and a memorandum of law in support of a motion for injunctive relief hardly amounts to overbilling.[7]

---

[7] I also reject the government's argument that Attorney McConnell spent 3.70 hours on September 4, 2001 in preparing a one-page cover motion. McConnell's billing records indeed indicate that on September 4, 2001, he spent 3.70 hours on what is identified as "prepare motion for preliminary injunction." (Messier Affirmation, Ex 1 at 2.) A complete review of the billing records shows that on September 4, 2001, McConnell worked on the motion for the preliminary injunction and the accompanying memorandum of law, as McConnell's September 5, 2001, billing entry shows he revised the

Similarly, it was proper for Equivest's attorneys to allot considerable time to Equivest's proposed findings of facts and conclusions of law. This document was approximately sixty-five pages in length, well-researched, contained extensive cross-references to the trial transcripts, and was a valuable aid to me in resolving this matter. Accordingly, I will not reduce Equivest's fee award based on the government's claim that plaintiff's counsel was excessive in its careful preparation of pleadings for this Court.

## D. The Time Billed For Trial Preparation and Trial Work Was Reasonable

■ The government also levies several complaints against the trial preparation and participation of Equivest's attorneys. Specifically, the government contests what it describes as "the duplication of work on preparing the trial outline and other trial preparation," and excessive time preparing witnesses for trial. I agree with the government's contention that the two attorneys handling this matter did indeed devote a substantial amount of time to prepare witnesses and other necessary trial work. I disagree, however, with the government's contention that this time was excessive, especially taking into account the government's obstreperous conduct of this litigation. As described in my decision in the consolidated portion of this litigation, the government obstructed the discovery process leading up to trial and interjected every impediment it could think of to avoid living up to its responsibility to fix the Territory's system of real property taxation that it had already agreed, was broken. *See Berne Corp.*, 262 F. Supp. 2d at 550-52. This behavior forced Equivest's attorneys to spend additional time preparing for trial. For example, because the government was not forthcoming in responding to interrogatories and government witnesses often made inconsistent statements, the plaintiff's attorneys were forced to review voluminous transcripts and prepare extensive rebuttal outlines. Moreover, the government's pre-trial behavior put Equivest on notice that it would contest every possible issue at trial and thereby increased the time Equivest's attorneys had spend preparing for trial. In light of these facts,

---

memorandum of law. Thus, I accept plaintiff counsel's claim that on September 4, 2001, McConnell actually worked on both documents and find it was not excessive to spend 3.70 hours drafting both filings.

I find that the time billed for trial preparation was necessary and reasonable.

I also reject the government's claim that it was unnecessary for Attorney McConnell to participate in the consolidated and individual portions of trial. As noted above, Attorney McConnell was one of only two attorneys handling the bulk of this matter. Although he was not Equivest's lead counsel in the courtroom, his presence throughout this litigation was critical, as he often consulted with the lead counsel during trial and assisted lead counsel in determining and organizing many exhibits. Accordingly, I will not eliminate or discount the fees associated with Attorney McConnell's attendance to Court.

## E. Equivest's Attorneys Did Not Fail to Delegate or Overcharge for Simple, Administrative Tasks; Attorney Messier's Travel to Miami Was Reasonable But Will Be Reduced To Account for Reduced Efficiency In Transit

The government next contests what it describes as Equivest's attorneys' overbilling for administrative tasks and failure to delegate other simple tasks. The government has identified five items in its initial opposition filing that allegedly represent this overbilling and failure to delegate. In its reply brief, Equivest's attorneys agreed to forgo the fees associated with three of the five specifically identified items, totaling 2.30 hours of attorney work and 1.0 hour of paralegal work.[8] Accordingly, I will reduce Equivest's award to reflect this agreement.

The remaining two objections that allegedly demonstrate a failure to delegate and overbilling for simple tasks are that plaintiff's counsel billed for phone calls even when the person phoned was unavailable and that the fees for summarizing the depositions of Verne Callwood, Roy Martin, and Kenneth Voss were excessive. The government has not identified specific examples of plaintiff's counsel charging for phone calls that were not successful in reaching an intended recipient. Without such guidance from the government, I was able to identify only one phone call for which Equivest was billed that did not reach its intended

---

[8] Specifically, Equivest has agreed to forego fees for the 2.30 hours Attorney McConnell spent on December 24, 2002, summarizing documents; the 0.80 hours Valynne Cuchara spent retrieving a tax status letter from the Department of Finance on June 5, 2002; and the 0.20 hours Cuchara spent calling the Tax Assessor's office to request a copy of a tax bill on July 22, 2002.

recipient.[9] The records indicate that on April 18, 2002, Attorney McConnell placed a call to an unavailable recipient but left a message regarding settlement. Although the call did not result in a direct connection with its intended target, substantive information was communicated for which these attorneys could reasonably charge their client. *See Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (stating that telephone related expenses are recoverable under 42 U.S.C. § 1988 when it is the custom of attorneys in the community to bill for such expenses). Thus, I will not deny Equivests attorneys' fees for this call.

Likewise, I find no reason to reduce or deny the fees associated with summarizing the depositions of Verne Callwood, Roy Martin, and Kenneth Voss. As these three individuals were central figures in the dispute, it was entirely reasonable for Equivest's attorneys to carefully review and organize the testimony they provided during depositions.

Finally, the government argues I should reject entirely or reduce the fees associated with Attorney Messier's travel to Maimi. I find no reason to deny Equivest all fees billed for Messier's round-trip travel to Miami on August 11 and 12, 2002. The trip was reasonably necessary to meet with and confer with Equivest's expert witness, Kathleen Conroy. Moreover, the billing records demonstrate that Messier used his travel time to work on this matter by reviewing deposition transcripts on the plane and in his hotel. I do, however, agree with the government's argument that a lawyer's efficiency in performing legal work is reduced while in transit. I will therefore reduce by twenty-five percent the fees Messier charged Equivest for work performed while traveling on August 11, 2002, and August 12, 2002.

## F. Equivest Is Entitled to An Award of Fees and Costs Regarding Its Litigation Before the Court of Appeals

■ The government argues that I should deny Equivest all fees associated with plaintiff counsel's appellate work in this matter because "there seems to be a difference of opinion" regarding whether appellate work is compensable under section 1988. Contrary to the government's argument, it is well established that a successful civil rights plaintiff may

---

[9] I note that, except for a call on April 18, 2002, all of Equivest's attorneys' telephone-related fees are for what is described as "telephone conferences" or "teleconferences" with specifically identified individuals.

recover under section 1988 attorneys' fees incurred in defending a favorable trial court ruling before the Court of Appeals. *See, e.g., Ustrak v. Fairman,* 851 F.2d 983, 990 (7th Cir. 1988). It is true, as the government argues, that once the Court of Appeals has considered an application for appellate attorneys fees, the prevailing party may not resubmit the same application to this Court. *See Yaron v. Twp. of Northampton,* 963 F.2d 33, 37 (3d Cir. 1992). It is also true, as the government notes, that on April 3, 2003, Equivest received an award for costs in the amount of $280.60 for reproduction of its appellate brief and appendix. The lost logic in the government's argument, however, is that Equivest's award from the Court of Appeals was rendered under Rule 39 of the Federal Rules of Appellate Procedure and not pursuant to section 1988. Thus, because Equivest has not filed a section 1988 request for attorneys' fees and costs with the Court of Appeals, I retain the authority to award attorneys' fees related to its appellate work. Having determined that the fees for this appellate work were entirely reasonable, I reject the government's request that I deny them.

## G. Equivest is Entitled to Attorneys Fees and Costs It Incurred in Successfully Defending Against The Government's Petition for Writ of Certiorari

 In opposition to Equivest's second supplemental attorneys' fees affirmation and declaration, the government argues that Equivest cannot recover attorneys' fees related to its retention of counsel based in Washington, D.C. This non-local counsel successfully defended Equivest against the government's petition for a writ of certiorari to the United States Supreme Court. The government argues all of these attorneys' fees should be denied because the attorneys are not admitted to practice in the Virgin Islands and have not been admitted *pro hac vice,* thus they may not be awarded fees by this Court.

As the government suggests, all attorneys practicing before this Court must, pursuant to Local Rule of Civil Procedure 83.1, be barred in this jurisdiction or admitted *pro hac vice.* The plaintiff's Washington, D.C.-based attorneys, however, never appeared in this Court and only acted on Equivest's behalf in the United States Supreme Court, where they are admitted and authorized to practice. The government has provided no authority, as I am sure none exists, requiring attorneys practicing before the United States Supreme Court to be barred or admitted *pro hac vice* to

practice in the United States Virgin Islands. Even more important, the government has provided no authority establishing that I may not award Equivest for the reasonable attorneys expenses it incurred in defending against its petition for a writ of certiorari. Accordingly, I will award Equivest the fees and costs associated with defending against the government's petition for a writ of certiorari.

## H. Government's Financial Plight Does Not Obviate Its Responsibility to Compensate for Reasonable Attorneys Fees and Costs Under 42 U.S.C. § 1988 and 5 V.I.C. § 541

 Finally, the government requests that I consider what it refers to as its "financial plight" in awarding Equivest attorneys' fees and costs. It is characteristically brazen for the government to ask for a reduction on these grounds given that it willfully violated the plaintiff's civil rights. Although I regret that the politicians in charge of the governance of the Virgin Islands have placed the Territory in dire financial straits, the government may not use its financial mismanagement as a basis to deny the victims of its unlawful behavior their just compensation under 42 U.S.C. § 1988 and 5 V.I.C. § 541.

The government unwisely elected to defend the indefensible at trial and to litigate this matter to its bitter end. I will not deny this successful plaintiff its just attorneys' fees and costs because the government has made similarly unwise decisions in the management of its finances. Moreover, the highest appointed officials of the government, including the Attorney General and the Commissioner of Finance, repeatedly assured this Court that the Virgin Islands Government would be able to fully pay any monetary judgment that might be entered against it in this litigation. Indeed, the officials professed to be offended at plaintiff counsel's suggestion to the contrary. Thus, I will not give credence to the government's claims of poverty now that it has lost utterly.

## III. EQUIVEST IS ENTITLED TO $354,666.45 IN ATTORNEYS' FEES

Having reviewed the requisite billing records and considered the government's corresponding protests, I find that, with the exception of the minor reductions discussed below, Equivest shall be compensated for the expenses it incurred in successfully prosecuting this matter. As discussed above, calculating Equivest's fee award involves two

elements: the number of hours reasonably expended on the litigation, and an appropriate hourly rate. I will address each element individually.

## A. Number of Hours Reasonably Expended On the Litigation

Equivest seeks reimbursement for 1,698 hours of legal work performed by its attorneys and their staff.[10] In considering the government's many objections to the plaintiff's requested attorneys fees, I thoroughly reviewed the hours billed by Equivest's attorneys and am convinced that, with the exception of the hours accounted for in subpart C below, they are all reasonable. Accordingly, I will calculate the lodestar based on these 1,698 hours and subtract any unnecessary time in the final step of the analysis.

## B. The Rates Charged By Equivest's Attorneys Represent Reasonable Hourly Rates

Next, I determine the reasonable hourly rate to apply to the 1,698 hours of legal and support work Equivest's attorneys spent in this matter. As a starting point, I first look to the fees charged by Equivest's attorneys. As detailed in their billing records, plaintiff counsel's billing rates on this matter range from $95.00 per hour for paralegal work to $300.00 per hour for work by a senior partner. In particular, the two primary attorneys associated with this matter, Messier and McConnell, billed at rates of, respectively, $235.00 per hour and $200.00 per hour. The non-local attorneys responsible for opposing on Equivest's behalf the government's petition for a writ of certiorari charged $403.75 per hour for work by a senior partner and $246.50 per hour for work by an associate.

Although these rates are above average for this jurisdiction, they are justified by the higher expertise of Equivest's attorneys and the unusual complexity of this litigation. It is noteworthy that the government admits that Attorneys Messier and McConnell are experienced in their field and are members of a "well-reputed firm." (Opp'n at 19.) I also find it

---

[10] This total number of hours was determined from the four affirmations Equivest's attorneys submitted to this Court. Specifically, the May 23, 2003, affirmation of Attorney Messier details 1,343.20 hours reasonably devoted to this litigation; Messier's August 21, 2003, affirmation describes another 61.70 hours; Messier's July 7, 2004, affirmation provides billing records for an additional 188.50 hours; and Attorney John Dienelt's July 7, 2004, detailing 104.60 hours.

persuasive that the amounts charged by Equivest's attorneys represent their normal billing rates, as the Supreme Court has instructed that "a reasonable attorney's fee under § 1988 is one calculated on the basis of rates and practices prevailing in the relevant market." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286, 105 L. Ed. 2d 229, 109 S. Ct. 2463 (1989); *see also Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973) ("the value of an attorney's time generally is reflected in his normal billing rate"). These rates are "'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286, 105 L. Ed. 2d 229, 109 S. Ct. 2463 (1989) (quoting *Blum v. Stenson*, 465 U.S. 886, 896, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984)). Accordingly, I find to be reasonable the rates Equivest paid its attorneys and will use these rates in calculating the lodestar amount.

## C. Calculation of the Lodestar And Consideration of Factors Outside the Lodestar Results in A Fee Award of $354,666.45

For the reasons stated above, I find that the rates charged by the plaintiff's attorneys were reasonable and that the hours those attorneys devoted to this litigation were, except for the reductions discussed below, entirely appropriate. Therefore, multiplying plaintiff counsels' reasonable rates with the respective hours they devoted to this matter results in a preliminary lodestar amount of $374,912.05.[11]

To reach a final lodestar amount, I will now account for hours not reasonably expended on this litigation or hours that the plaintiff has voluntarily withdrawn. As discussed above, I accept the plaintiff's offer to reduce by five percent the overall amount of fees requested, thereby alleviating any concern of unnecessary staff conferences and duplication of effort. Incorporating this five percent reduction results in an attorneys fees' amount of $356,116.45. As also discussed above, Equivest's attorneys have voluntarily agreed to withdraw certain fees requested and

---

[11] In its July 7, 2004 Notice of Filing Second Supplemental Attorneys Fees Affirmation and Declaration, Equivest calculates its total attorneys fees as $374,885.05. The third footnote of that filing, however, reveals that Equivest made a calculation error in adding the four fee totals from its four affirmations in this matter. Specifically, that footnote correctly indicated the four affirmations detailed attorneys fees of $283,662.00, $14,267.00, $44,241.50, and $32,781.55. The total of these four amounts is $374,912.05 and not, as Equivest states in its July 7, 2004, Notice, $374,885.05.

I have exercised my authority to eliminate other fees. Specifically, the plaintiff withdrew its request for $560.00 in fees associated with 2.30 hours of work by Attorney McConnell on December 24, 2002, and 1.00 hour of work by paralegal Cuchara on June 5, 2002, and July 22, 2002. I have also reduced by twenty-five percent the fee associated with work performed by Attorney Messier during his travel to and from Miami, reflecting decreased productivity while traveling. Taking these reductions into account results in a final lodestar amount of $354,666.45.

As the final step in calculating Equivest's appropriate fee award, I must consider if there are any other factors not taken into account in the lodestar amount that warrant adjusting the fee upward or downward. *See Hensley v. Eckerhart*, 461 U.S. 424, 434, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983). In considering such factors, the Supreme Court has instructed that "the important factor is the results obtained" and that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 434, 435. Given that the plaintiff has achieved overwhelming success, the Supreme Court's guidance strongly favors awarding Equivest a fully compensatory fee. Thus, having found no extraneous reasons to deviate from the lodestar amount and considering Equivest's total victory in this matter, I will award $354,666.45 in attorneys' fees.

## IV. EQUIVEST IS ENTITLED TO AN AWARD OF $11,336.35 FOR COSTS AND $120.00 FOR EXPERT WITNESS FEES

Equivest has requested $11,336.35 for costs it incurred in successfully prosecuting this matter. Equivest has not sought reimbursement for everyday operating expenses such as long distance telephone charges, facsimile and copying costs, and mailing expenses. Instead, its requested costs consists of expenses closely related to this litigation, such as court filing fees, process service fees, transcript purchase fees, witness fees, and travel expenses for Messier's necessary trip to Miami. Having reviewed these requested costs, I find that they are reasonable expenses which are normally charged paying clients.

The government contests the portion of Equivest's requested costs relating to witnesses that were not deposed or did not testify at trial, arguing that I should deny all witness and process service fees for these individuals. I disagree. All witnesses that were subpoenaed were either government employees or were affiliated with the government and were

subpoenaed because the government would not agree to produce them without a subpoena. Equivest informs in its reply brief that when a witness fee check was returned by a witness, it was credited to the account and does not appear on the costs submitted to the Court. Thus, to the extent that witness fees appear on the billing records, they represent checks that were not returned by the government's witnesses. As the government could have voluntarily produced these witnesses, any costs associated with their failure to return checks to which they were not entitled should fall on the government. Thus, I will not deny Equivest costs for process service or witness fees and, pursuant to 42 U.S.C. § 1988 and 5 V.I.C. § 541, will award Equivest $11,336.35 for its costs in this litigation.

In its initial request for costs and fees, Equivest sought reimbursement pursuant to 42 U.S.C. § 1988 for expert witness fees totaling $56,884.95. In its reply brief, however, Equivest accurately acknowledges such an award is not warranted because the United States Supreme Court has held that section 1988's provision for a "reasonable attorney's fee" does not include recovery of expert witness fees. *See West Virginia Univ. Hospitals v. Casey*, 499 U.S. 83, 88, 102, 113 L. Ed. 2d 68, 111 S. Ct. 1138 (1991); *see also Abrams*, 50 F.3d at 1225 ("the reading given 'attorney's fee' ... does not include fees paid for expert witnesses"). Thus, if Equivest is entitled to any reimbursement for expert fees, that reimbursement must be made pursuant to the local attorneys' fee statute, 5 V.I.C. § 541. The Third Circuit Court of Appeals has instructed that section 541 limits reimbursement for expert fees to the minimal amount allowed under 28 U.S.C. § 1821. *See Dr. Bernard Heller Foundation v. Lee*, 847 F.2d 83, 86-88 (3d Cir. 1988). Section 1821 allows witnesses to be paid $40.00 per day for their attendance and for their travel time. Accordingly, I will grant Equivest's request that it be awarded $120.00 for travel and attendance expenses regarding the expert testimony of Kathleen Conroy and Steven Santora.

## V. CONCLUSION

It is well settled that, absent special circumstances, a successful civil rights plaintiff should recover attorneys fees pursuant to 42 U.S.C. § 1988. It is also well settled that 5 V.I.C. § 541 provides me with discretion to award to prevailing parties fees and costs associated with local causes of action. Pursuant to my authority under both statutes, I will

464

award Equivest $354,666.45 in attorneys' fees, $11,336.35 in costs, and $120.00 in expert witness fees it reasonably incurred. These amounts are not a windfall for the plaintiffs and are not ordered as punishment against the government. Rather, they represent just compensation for Equivest's litigation expenses, as permitted under local and federal law. To insure that the government promptly pays the $366,122.80 compensation it now owes the plaintiff, I will order the government to pay the amount it owes within ninety days of this order. I will also order the parties to provide a notice to the Court within ninety days of the date of this order informing whether payment has been made. If payment has not been made by that date, the Court will scheduling a hearing for the parties to address whether the government should be held in contempt for violating this Court's order.